Filed 1/23/26  P. v. Ponce CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C101462 |
| v. | (Super. Ct. No. 14F05881) |
| VICTOR PONCE, | |
| Defendant and Appellant. | |

Defendant Victor Ponce sexually abused his minor daughter, M.D., on multiple occasions.  A jury found him guilty of 15 sexual offenses, including two counts of exhibiting harmful matter to a minor for purposes of seduction and sexual gratification, and the trial court sentenced him to 93 years eight months in prison.

Defendant now contends there is insufficient evidence to support his two convictions for exhibiting harmful matter to a minor.  Finding no merit in his contention, we will affirm the judgment.

1

BACKGROUND

M.D., who was 19 years old at the time of trial, testified that when she was eight years old defendant took her to a secluded fishing spot. After fishing, defendant told her to watch a pornographic video on his phone while he packed up. M.D. described the video as "a woman, a guy, and they were both without clothes, and they were touching each other in the private parts, as well as they were basically having sexual moments." She explained she saw a penis and a vagina, and by "sexual moments," she meant the man and woman were having sex because "the penis was getting in the vagina from the lady." M.D. did not understand why her father asked her to watch the video. At the time, he did not ask her any questions about the video or offer any explanation. She estimated she spent 10 minutes watching the video before defendant got in the truck, took the phone from her without saying anything, and drove them home. On the way home, defendant warned her they would get in trouble if she told her mother about the video.

A few months after the fishing trip, defendant played M.D. another video on his phone while they were at home. M.D. testified that the video showed adult women dressed as princesses fondling each other's vaginas. Defendant sat next to her as she watched the video, and again told M.D. to not tell her mother about the video because they would get in trouble.

Later, defendant showed M.D. a third pornographic video and told her that the "videos were used for when adults wanted to have sex, and they could get excited to do those positions or what they were doing in the video." M.D. said the video showed two adults having sex. She watched the video for about five minutes before defendant took his phone away and told her not to tell her mother so they would not get in trouble.

After showing M.D. the videos, defendant sexually assaulted her on multiple occasions while he was alone with her. During one incident, defendant tried to insert his penis into M.D.'s vagina while she was on her hands and knees. On another occasion, defendant promised to buy M.D. a television if she would lick his penis. After doing so

2

a few times, she stopped and said she did not want the television. Another time, defendant kissed M.D. on the mouth, touched her breasts, and rubbed her vagina on the outside of her clothes. After that incident, M.D. told her mother defendant had been touching and hurting her, but when her mother confronted defendant, he shoved the mother and stormed off. Defendant later apologized and said he would not do it again. Nevertheless, on another occasion, defendant asked M.D. to help him ejaculate and had sexual intercourse with her. On a subsequent morning, M.D. awoke to find defendant kissing her on the mouth like she had seen in the videos he had shown her. Defendant tried to pull her pants and underwear down and she felt his penis touching her buttocks. M.D. again disclosed the abuse to her mother, and a few days later the mother called police. Defendant absconded to Mexico for nearly a decade, but he was extradited in 2021.

After the abuse was reported to law enforcement, M.D. participated in a Special Assault Forensic Evaluation (SAFE) interview in August 2014. The recorded video of her SAFE interview was played for the jury during trial.

During closing argument, the prosecutor argued that defendant showed M.D. the videos as a way to normalize the behavior and to groom M.D. into thinking that such conduct was okay. According to the prosecutor, defendant was attempting to make her okay with what he was intending to do. Defense counsel countered that there was no corroboration of the videos, emphasizing that the People had the "burden to show that it was pornography. People engaged in sex."

In April 2024, the jury found defendant guilty on two counts of exhibiting harmful material to a minor for purposes of seduction (Pen. Code,[1] § 288.2, subd. (a) -- counts one & two) and 13 counts of committing a lewd and lascivious act on a child under 14

---

[1] Undesignated statutory references are to the Penal Code.

years of age by use of force or violence (§ 288, subd. (b)(1) -- counts three & five through sixteen).  In addition, the jury found true the aggravating factors that M.D. was particularly vulnerable and that defendant took advantage of a position of trust. (Cal. Rules of Court, rule 4.421(a)(3), (a)(11).)

The trial court sentenced defendant to the upper term of three years on count one, a consecutive eight months (one-third the midterm) on count two, consecutive upper terms of 10 years each on counts three, five through seven, and twelve through sixteen, and concurrent upper terms of 10 years each on counts eight through eleven, for a total aggregate sentence of 93 years eight months in prison.

DISCUSSION

Defendant contends there was insufficient evidence to support his convictions for exhibiting harmful matter to a minor under section 288.2.  Specifically, he claims the evidence was constitutionally inadequate to show that the videos constituted harmful matter.  We disagree.

To assess the sufficiency of the evidence to support defendant's convictions for exhibiting harmful material, we review the whole record " ' " "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  We do not resolve credibility issues or evidentiary conflicts.  (*Ibid.*)  "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*Id.* at p. 358.) Reversal for insufficient evidence is warranted only when, under no hypothesis

whatsoever, is there sufficient substantial evidence to support the jury's verdict. (*Id.* at p. 357.)

In order to prove defendant guilty of violating section 288.2, subdivision (a), the People had to establish that (1) the videos exhibited "harmful matter" depicting sexual conduct; (2) defendant knew the character of the material, (3) defendant knew or should have known that M.D. was a minor; (4) defendant intended to arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or M.D.; and (5) defendant intended to engage in sexual activities with M.D. or to have either of them touch an intimate body part of the other. (§ 288.2, subd. (a).) For the purposes of section 288.2, harmful matter "means matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." (§§ 313, subd. (a), 288.2, subd. (c) [incorporating § 313's definition of "harmful matter"].) "Sexual conduct," whether actual or simulated, includes sexual intercourse, masturbation, or exhibiting the genital or pubic area for the purpose of sexually stimulating the viewer. (§§ 311.4, subd. (d), 288.2, subd. (b) [incorporating § 311.4's definition of "sexual conduct"].)

The videos were not admitted into evidence or shown to the jury. Rather, the evidence of their content came from M.D., who testified to what she saw. Relying primarily on *People v. Dyke* (2009) 172 Cal.App.4th 1377, defendant argues that M.D.'s description of the videos was insufficient to establish that they consisted of harmful matter. In that case, a 16-year-old minor testified that while she was at her friend's house, the friend's father briefly showed them two television programs. (*Dyke,* at pp. 1380, 1385.) The first program showed a naked woman dancing; they watched the program for one to eight minutes. (*Ibid.*) The second program showed the upper bodies of a naked woman and a naked man from the side, having sex, with the woman on top. (*Id.* at

5

pp. 1380-1381.) They watched the second program for about 45 seconds. (*Id.* at p. 1381.) After the minor went to bed, the father entered her room and rubbed her breast, kissed her mouth, and asked her if she felt "horny." (*Ibid.*) In an appeal from the father's conviction for violating section 288.2, the appellate court held that the evidence was insufficient to establish the exhibition of harmful matter. There was only the minor's description of a nude woman dancing, and a naked couple, from the waist up, having sex. (*Dyke,* at pp. 1381, 1384-1385.)

The People counter by citing *People v. Powell* (2011) 194 Cal.App.4th 1268 (*Powell*). In that case, a father was convicted of exhibiting harmful matter to his minor daughter and then raping her. (*Id.* at p. 1274.) The police did not seize the movies the father had shown to his daughter and there was no evidence of their content beyond the daughter's description. Some of her characterizations were more general, describing the movies as " 'bad' " and " 'nasty.' " (*Id.* at pp. 1290, 1293.) The appellate court found that those generic descriptions were insufficient to determine whether the material was harmful under the law. (*Id.* at pp. 1291, 1293.) However, the daughter's description of seeing a movie depicting people engaged in simulated or unsimulated sexual activity in which "[p]enises, breasts, and vaginas [were] featured in lewd displays" was sufficient to satisfy the harmful matter element of the offense in order to uphold the defendant's section 288.2 conviction. (*Powell,* at p. 1295.) The daughter said she saw individuals with their penises and vaginas exposed, engaging in sexual activity. (*Id.* at pp. 1284-1285.) A man in the movie uncovered his penis and put it in a woman's vagina. (*Id.* at p. 1286.) The daughter said a man and woman had sex and she could hear and see them perform it. (*Ibid.*)

Here, M.D.'s description of the videos is more like the detailed portion of the description in *Powell* and less like the description in *Dyke*. M.D. said that in the first video, she saw a naked man and woman having sex in which a penis was in a vagina. M.D. described the second video as showing adult women fondling each other's vaginas.

6

Like in *Powell*, M.D.'s description of the videos was sufficient to satisfy the harmful matter element of the offense in order to uphold defendant's section 288.2 conviction. (*Powell, supra*, 194 Cal.App.4th at p. 1295.)  And in further support of the conclusion that the videos constituted harmful matter, defendant repeatedly told M.D. they would get in trouble if her mother learned about the videos.  The jury could reasonably infer from the evidence that an average adult, applying contemporary statewide standards, would find the material patently offensive and lacking any serious literary, artistic, political, or scientific value for a minor like M.D.  (§§ 288.2, subd. (c), 313, subd. (a).)

DISPOSITION

The judgment is affirmed.


_____/S/_____
MAURO, J.

We concur:


____/S/_____
EARL, P. J.


____/S/_____
WISEMAN, J.*


_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.